And our last case this afternoon is case number 5-24-0284, People v. Orlando Sheron. I'm not sure how to pronounce the last name. Sheron? Sheron. Sheron. This case was originally scheduled, I believe, in February, and for various reasons got rescheduled today, so we're happy to have you here today. We've read your briefs. We're looking forward to your arguments, some interesting arguments here today. So, if you're ready to proceed, you may begin. Please also state your name for the record for the recording purposes. Thank you. Steve Greenberg. I'm here to argue on behalf of Mr. Sheron. I am no Abraham Lincoln, but I'm going to do my best. So, in this case, Justices, I think, to me, it's a very simple case. This is a case, it was a murder case, the defense was second-degree self-defense, and the instruction wasn't given. Everyone agreed it should be given, there was no dispute it should be given, and it wasn't given. The jury sent out a question, they said, we think we're missing something, and they were told, re-read your instructions. I don't know how much clearer it could be that something is wrong with this case. The second major problem that I see with this case, there's many problems we've identified in our briefs, but that I want to highlight for the Court, is that I also don't believe that they proved Mr. Sheron guilty, given the underlying facts of the case. As far as the instructional error, I think that the Court has to evaluate it as plain error, or perhaps under ineffective assistance of counsel. His attorney asked for the instruction, the Court said it was going to give the instruction, it asked Mr. Sheron if he wanted the instruction, and it just wasn't given. And we've said it out in our brief, what the jury wasn't told. They were told, they were actually told that for first-degree murder and second-degree murder, the State had to prove the following, and they were told the exact same thing for both. In other words, the jury was told that to prove, this is on page 26 of our brief, to prove first-degree murder and second-degree murder, the State had to prove the exact same elements. The exact same elements for first-degree murder and second-degree murder. And nothing else was given. They weren't given the preponderance instruction, they weren't given the road map of what they were supposed to do after that. I can almost, they weren't given any of the rest of it. And they didn't know what to do. So they were never told how to find second degree, and they were never given the instruction, frankly, on how to find self-defense in the case. So there are multiple paragraphs that were omitted that should have been given. Approximately how many paragraphs, five, were omitted? Six. Six paragraphs were omitted, but the entirety of it was omitted. Nothing was given that should have been given for self-defense. They weren't told anything about it. They weren't even given the language in self-defense about legal justification or in the original instruction that would be inserted. They weren't given anything about it at all. It was argued and nothing was said. Not always, but in many appeals and questions about jury instructions, the defense has to offer an alternative or the defense has to offer instruction where they can complain about an improper instruction. Was one given here? My memory, it's been a while since I spoke to some of this, but my memory is the defense attorney just relied on the state to present the instructions, and the defense attorney did not submit alternate or other instructions. Correct. And, you know, what usually happens in these cases, and primarily I'm a trial lawyer, so what usually happens is the state prepares all of the instructions and the defense prepares a few instructions, but usually something other than the basic instructions did. Defense attorney here was an attorney from the St. Louis area. He happens to have an Illinois license, and I don't think he had done a murder case here, and he did rely on the state to prepare the instructions, as did the court. And that's why I say I think it needs to be evaluated under the plain error standard, and we've raised ineffective assistance. However, under the Supreme Court rule, I think that the court can still look at the error, and I'm sorry, the rule escapes me. It's in my brief. It's one of the 600 series of the rules. The court can still look at it, and when an error in the instructions is so clear and obvious and it denies someone a fair trial, it doesn't matter whose fault the error is. And it's not just that error in the instructions. He didn't offer any of the instructions he should have offered. For instance, there was a co-defendant that testified. He didn't ask for an accomplice instruction. The co-defendant happened to be a multiple-time convicted felon. He didn't ask for an instruction about the credibility of a witness who was a multiple-time convicted felon. He didn't offer any of those. Can I interrupt you for a moment here just to clarify? So while it's not dispositive, what do you think happened here? Were these just type-drawn, submitted? It doesn't appear that it was deliberately left out. We don't know. I don't know if it was deliberately left out or not. I wasn't there. Some people could think that it was deliberately left out because maybe they had discussions and the prosecutor realized that the defense attorney didn't know what he was doing and thought he'd pull one over. Maybe it was just an accident. I don't know how you take the standard instruction that comes from the book and turn it into, to sustain either first degree or second degree, the statement for the felon. I mean, there are changes to the instruction. They're going to act from the standard instruction to the instruction that was given. I don't know how it slipped by everybody. I don't know, and I don't think that's material to find an error here. I don't necessarily either. I just was wanting to know how you viewed it. Like I said, I don't think it's positive, but it's a curious fact. When I got this case, it was before the post-trial motion, and I followed the post-trial motion, so I raised these issues in the post-trial motion, and I was frankly flabbergasted that this could happen and then the jurors could ask the question and it could get by everybody that there still was not that instruction, that it had just been omitted. I could see omitting an instruction, so missing the preponderance instruction. I could see missing a paragraph in an instruction, but to completely miss in a case like this the instruction in its entirety, I can't fathom how that would happen in a case. So you're using that phrase then. There's also an argument presented that even if a portion of a pattern instruction is omitted, if we view instructions in their entirety, that it could solve that issue. How do you see that? Well, I don't think there's any merit to that argument because they make an argument that it's harmless error also. It's effectively no trial at all on the issue. The jury was deprived 100% of considering any mitigating factor because they weren't given any instructions on it at all. So effectively, if this court were to accept any of the state's arguments about harmless error or he was proven guilty and the jury would have found him guilty anyway, then this court is effectively sitting as a three-person bench trial when someone asked for a jury trial. And when the state and the court who listened to the witnesses, who saw the witnesses testify, all agreed. There was no hesitation there that there should be a second-degree instruction. No one said at the instruction conference that maybe we shouldn't give this instruction. Everyone was 100% in agreement that we should give it. No one said, you know, there was no resistance. No one fought the defense on that. The other thing I would point out on that issue is I don't even believe that Mr. Chiron was guilty of a murder here because he shot this young man in the legs. And it was clear that he shot this young man in the legs and then turned away. And the other gentleman, Mr. Johnson, then grabbed a gun and executed him. And there wasn't a single witness in this case who testified to a plan, a discussion, a signal, or anything. These seemed to be two independent acts. I know that's sort of hard to believe that they were independent acts, but on this record, they were two independent acts and the medical examiner testified that the shots that Mr. Chiron made, the injuries, had absolutely nothing to do with the death of this case. Any other questions? With respect to the argument that it's better to give this instruction and constitute a plan error or a structural error mandating reversal can remain for a new trial, is there a specific case that you cite that's on point for that argument? And again, I've looked at everything before this was set for argument previously. Yeah, People v. Smith says where you fail to advise of arguments, elements of the crime. People v. Delgado. Kavanaugh is another case that we cited that says that I cannot. There's a whole list of them in our brief that say that. Any other questions? No, thank you. Do we have a chance for a rebuttal later? Thank you. Counselor Apole? Chief Justice, Your Honors. May it please the Court. For the record, my name is Louis Hizzo, and I represent the state of Apole on the matter. I would like to take a moment just to briefly respond to one thing that counsel had stated before coming off the bench, in which he tries to muddy up the waters a little bit with regards to the accountability as well as the proximate cause standard and how the courts have viewed it historically. So with regards to the proximate cause theory of liability, the question is whether the defendant's actions set in motion a chain of events that ultimately caused the death, not whether or not he was the one that was ultimately responsible for it, as counsel aims to have this Court to view that standard. That means the state is not required to prove that the defendant's actions was the sole and immediate cause of the death. Now, I understand that Dr. Jacoby's testimony could not pinpoint exactly which shot caused the death. That doesn't necessarily take away from the case law suggesting that the testimony only needs to show that the defendant triggered that motion, essentially. Now, as to the defendant's first issue on appeal with regards to jury instructions, it is true. There is a large portion of IPI Criminal 7.06 that provides guidance for second-degree murder that was obviously omitted from the record. The record is silent as to why that is the cause, but we do know that for whatever reason it's just not there, and the state's not going to stand before this Court today and argue that it was there when everyone knows that that's the case, that it's not. However, as frequently highlighted within our brief, the Court should first note that the defendant obviously did not object to the instructions that were tendered, and the trial court actually specifically noted that both parties worked collectively in preparing the instructions. This is especially important because the defendant's failure to object at trial effectively weighed any asserted errors, a principle that's been repeatedly upheld on appeal, and in addition, it is also important to note that the claim can therefore be dispelled under the invited error doctrine. Under the invited error doctrine, a party cannot complain of errors that it has brought about. We cite two people v. Villarreal, as well as people v. Baker, for the propositions that active participation in directions of the proceedings, just like in this case, goes beyond mere waiver. Let me stop you for a second. Yes, Your Honor. It's kind of split in hairs, but they're important hairs. There's a big difference between, as the Supreme Court interprets it, waiver and forfeiture. Yes, Your Honor. Waivers are knowing giving up of a right. Forfeiture is something different. Waiving, it's pretty much gone. Forfeiture, we can take it up. You keep saying it was waived. Is that really what you mean? Yes, Your Honor. Specifically, with people v. Baker that we emphasize in our brief, and I want to quote, when defense counsel affirmatively acquiesces to the actions taken by the trial court, any potential claim of error on appeal is waived, and defendant's only available challenge is a claim of ineffective counsel. Claiming error applies to cases involving only forfeiture, not affirmative acquiescence as we have here. Now, that is especially important because our point is that, I want to highlight what the driving burden the defendant has to meet on appeal, as well as establish that he cannot show that he was prejudiced from these instructions. It is true that the lesser-included offense instruction was not given to the jury. However, the question here turns on whether the defendant can establish that he was prejudiced from the discrepancies, i.e., can he show that he would not have otherwise been guilty of first-degree murder. Wouldn't that be presumed of as structural error? I'm sorry, Your Honor. Wouldn't that be presumed if it was structural error, prejudice element? Your Honor, because it is ineffective counsel, we can dispel that issue by simply looking at prejudice first, before realizing whether or not error occurred. For that notion, we cite People v. Hanley, which states that if prejudice is not shown, a court can dispose of the claim without first determining whether counsel was actually deficient. Again, we go through the evidence that was presented at trial to show here, the most notable one being States Exhibit 18, which was two different angles of the murder occurring. That video, in conjunction with the testimony of Courtney Sanchez and Nakia Reliford, refuted the defendant's claims that he acted in self-defense, whether under the reasonable or unreasonable guidance. Both individuals there testified that Keon was not argumentative towards the defendant at the time, and both Courtney and Nakia were surprised when the defendant shot Keon, because there was no prior warnings. As a matter of fact, Nakia testified that she was surprised to learn that Keon was the victim who had been shot, because she believed it could have been anyone else. That's found on the record on page 1137 of her testimony. Furthermore, none of the witnesses here testified to seeing Keon holding a knife before being shot. This was critical to the jury's determination, because there was a knife that was presented to the jury that was recovered from the scenes. And so the testimony establishes that there was never a knife that was pulled prior to the defendant opening fire on the victim. And the point being here is that there was no danger of imminent harm towards the defendant. The video shows that as the victim was trying to get away from the defendant, the defendant continued to fire upon the victim as the defendant was trying to get towards that parking meter. And then you see the co-defendant, Tyrant, go from the other side of the vehicle and fire upon the victim as well. The jury had an opportunity to assess that video and the testimony presented and contrasted with the defendant's testimony and ultimately concluded with the right results. And the result being here that no reasonable juror could have ultimately found the defendant active with actual yet unreasonable belief of self-defense being necessary. Therefore, whether or not the jury was properly instructed here of the lesser included offense was of no consequence, as the outcome here would have ultimately been the same. How do we know that, though? Without the beginning of this instruction, didn't it effectively take away the defense? So without being instructed here, the jury's left to look at the evidence and see if they would find him guilty of first-degree murder, regardless of the lesser included not being in there. Ultimately, they conclude that based off of what they're seeing, and again, this court's able to review the obvious from Exhibit 18, it shows that at no point the defendant felt threatened by the victim. I mean, the victim was walking away, and it would seem as though he was turned away from the defendant by the time the defendant pulls the gun out from his waist and begins to fire upon the victim here. No reasonable juror, in light of looking at that, would have ultimately concluded that the defendant here was acting, whether reasonable or unreasonable, under the guise of self-defense. And because the evidence here overwhelmingly supported the defendant's convictions for first-degree murder, the defendant cannot show that he suffered prejudice and therefore establish successfully a claim of ineffective assistance to counsel. The State would rest on any other arguments with their brief at this time, and I see that my time is running out. I would like to give Your Honors a chance to answer any questions.  I think so. Attorney Izzo, how do we look at this from a different perspective? How do you address the judge's role and responsibility here? If the attorneys, in combination or singly, theoretically would submit an improper instruction, a non-IPI instruction, or an instruction incomplete as we have here, what responsibility do we place on the trial court? You know, I mean, I understand that there are – I would simply fall under Baker because of the principle that because both attorneys essentially work together collectively and provide the instructions acquiesced to them, because in that situation plain error is not applicable, I would say that it relieves the court of their duty. If plain error would be applicable, then I believe then we would be able to have a burden on the trial judges here to essentially correct the issues or bring them to the light of the record. All right. Thank you. Thank you. Thank you. Rebuttal? Thank you. Sort of circling back to where we started when we were talking about courthouses, I have tried cases in other states and in federal court. And in other states and in federal court, the judges actually, in all the cases they've done, prepare the jury instructions and then give them to us and tell us this is the starting point, which is kind of interesting and a lot of work for them. When you ask what role does the judge have, I think that the judge should have caught it. I think that the parties should have looked through the instructions when they weren't there. But I think that the fact that the judge asked the defendant if he wanted this particular instruction, this particular defense, overcomes any plain error, waiver, ineffectiveness, anything else, because the defendant wasn't going to go prepare the instruction. The defendant didn't know, and the defendant should not be, for lack of a better term, accountable or have to suffer because his attorney, who he hired, didn't submit the proper instruction. There's a case called Dominguez that we cite in our reply brief, 331 L.F. 3rd. And the cite here is 1015. It's cited in the case people v. Moore, 358 L.F. 3rd, 683, a 2005 case that talks about it and the nature of ineffective assistance. But where the judge has asked the defendant, and as far as the defendant knows, this has been given, he's told the judge, this is what I want, and he shouldn't have to suffer because his attorney then makes the mistake. But even if there were these other standards, as counsel says, ineffective assistance, we have raised that. We raised it in the trial court when we came in, and we raised it before Your Honors. I'll break my memory here. I think that what I recall is that the interplay between the attorneys and the trial judge referred to instructions by numbers. Is that correct? Yes. One, two, three, four, yes. Well, by numbers. And then the IPI. The IPI numbers also. Right. Correct. So a discussion wasn't had about the specific wording in any of these instructions. I'm sorry? A discussion wasn't had about the specific wording in any of these instructions, as far as I recall. I'm sure they have them in front of them. That's typically you have them in front of you, and you're looking at them when you're having that discussion, though. You don't just have a list. At least that's been my experience. I understand that. What I'm saying is the record reflects that it was referred to by numbers. Correct. Correct. Yes. And the instruction that should have been given is a different number than the instruction that was given. It's a different number in the IPI, the instruction that should have been given. Also, when counsel talks about, you know, harmless error and so forth, you have to remember there's not just a video in this case. There's testimony, including the defendant's testimony of what he perceived and the events as he perceived it. And even if the jury didn't find it was self-defense, they were deprived of the ability to find that it was an unreasonable belief in self-defense by not getting the instruction. So are there any other questions? I don't think anybody's happy with how much was left out of the instruction that was given. But one of the tests we sometimes look at is was it a misstatement of the law or was it to make the instructions to the jury confusing. And do you think just the omission of that with the other instructions that were given, in totality, you think it's still a misstatement of the law or confusing to the jury? It's absolutely a misstatement of the law. I mean, I think it's confusing because of the question. I think they had some confusion. That's obvious. It's a misstatement of the law because they weren't given the law, and I think that the cases we've cited in our opening briefs make it clear that where the jury is not given the law, that's clearly a denial of a fair trial. If you don't tell the jury what the law is, they don't know. They don't know how, you know, if I was charged with shoplifting and the jury was given instructions on a battery, how would they know what to find me guilty or not guilty of? And that's essentially what happened here. I was charged with murder. The jury was told all throughout the proceedings, all throughout the arguments, that maybe it wasn't murder or maybe I was justifying what I was doing or maybe I was mistaking what I was doing, but, you know, I had a little bit of an excuse, and then they were told, hey, it's all the same. Maybe the jury just randomly picked a verdict form. They had two verdict forms in front of them, first degree and second degree, and they were told they were both the exact same thing. How do we know that they just didn't pick first degree because it was number one instead of second degree? They were told first degree and second degree were the exact same thing. How do we know they didn't find, you know, second degree, and they just picked the top form? I mean, we really don't know. That's part of the problem. Thank you. Other questions? No, thank you. Thank you. All right. We appreciate your honesty. We're looking forward to these after reading the briefs. We will consider the arguments in your briefs, the arguments you make today, and we will take the matter under advisement and issue a decision in due course. I believe that concludes the settings for the March setting. We adjourn until April. All right. This court will be adjourned until April. Thank you.